IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | | |
|---|---|---|---|
| IN RE: NLG, LLC, | | : | Chapter 7 |
| | Debtor. | : | Bankr. No. 21-11269-JKS |

| | | | |
|---|---|---|---|
| Chris Kosachuk, | | : | |
| | Appellant, | : | Civ. No. 23-540-JLH |
| | v. | : | |
| | | : | |
| Alfred T. Guiliano, Chapter 7 Trustee for the Estate of | | : | |
| NLG, LLC, Select Advisors Group LLC, and 9197-5904 | | : | |
| Quebec, Inc., | | : | |
| | Appellees. | : | |

| | | | |
|---|---|---|---|
| Chris Kosachuk, | | : | |
| | Appellant, | : | Adv. No. 22-50421-JKS |
| | v. | : | |
| | | : | Civ. No. 23-541-JLH |
| Select Advisors Group LLC and 9197-5904 Quebec, Inc., | | : | |
| | | : | |
| | Appellees. | : | |

| | | | |
|---|---|---|---|
| Chris Kosachuk, | | : | |
| | Appellant, | : | Adv. No. 22-50086 (JKS) |
| | v. | : | |
| | | : | Civ. No. 23-542-JLH |
| Select Advisors Group LLC and Alfred T. Guiliano, | | : | |
| Chapter 7 Trustee for the Estate of NLG, LLC, | | : | |
| | | : | |
| | Appellees. | : | |

Chris Kosachuk, West Chester, PA

   *Pro se appellant*

Julia B. Klein, KLEIN LLC, Wilmington, DE

   *Counsel for appellees Selective Advisors Group LLC and 9197-5904 Quebec, Inc.*

**<u>OPINION</u>**

October 22, 2025

**HALL, U.S. DISTRICT JUDGE**

## I.    INTRODUCTION

The above-captioned appeals arise from the chapter 7 case of NLG, LLC and constitute the latest attempt by *pro se* appellant Chris Kosachuk ("Appellant") to avoid a state court judgment which he has been attempting to overturn for more than 12 years.  Appellant, styling himself as a creditor of NLG, LLC ("NLG," or the "Debtor") filed an involuntary petition against NLG under chapter 7 of the Bankruptcy Code.  Following the appointment of a chapter 7 trustee (the "Trustee"), Appellant filed a motion to convert the case to a case under chapter 11 of the Bankruptcy Code (Bankr. D.I. 71) (the "Motion to Convert").  On February 16, 2023, the Bankruptcy Court issued an Order denying Appellant's Motion to Convert (Bankr. D.I. 144) ("Conversion Order") for the reasons set forth in the accompanying Opinion (Bankr. D.I. 143) ("Conversion Opinion").  The Bankruptcy Court further dismissed two adversary proceedings seeking recovery from appellees Selective Advisors Group LLC ("Selective") and 9197-5904 Quebec, Inc. ("Quebec," and together with Selective, the "Appellees").  (Bankr. D.I. 146, 148.)  Following Appellant's requests for rehearing, reconsideration, and relief from each of these orders, the Bankruptcy Court issued its May 25, 2023 Memorandum Order (Bankr. D.I. 165) ("Reconsideration Order") denying Appellant's requests.  Appellant has appealed all of these orders.[1]  For the reasons set forth below, the Court will affirm each of the Orders.

---

[1] Civ. No. 23-540-JLH is Appellant's appeal of the Conversion Order.  Civ. No. 23-541-JLH is Appellant's appeal of the Bankruptcy Court's February 16, 2023 Order dismissing Appellant's adversary proceeding against Appellees, Adv. No. 22-50421-JKS (Bankr. D.I. 148) (the "Kosachuk/Selective Dismissal Order").   Civ. No. 23-542-JLH is Appellant's appeal of the Bankruptcy Court's February 16, 2023 Order dismissing the Trustee's adversary proceeding against Selective, Adv. No. 22-50086-JKS (Bankr. D.I. 146) (the "Trustee/Selective Dismissal Order"). The Notice of Appeal for each of these three appeals also lists the Reconsideration Order.

## II.    BACKGROUND

### A.    The Chapter 7 Filing

On September 24, 2021, Appellant, who is the founder of NLG, filed an involuntary petition for relief under chapter 7 of the Bankruptcy Code against NLG and was the sole petitioning creditor. NLG did not answer the involuntary petition.  No party objected to, moved to dismiss, or otherwise challenged the involuntary petition.  On January 7, 2022, the Bankruptcy Court entered the Order for Relief in an Involuntary Case.  (Bankr. D.I. 10.)

On the same day, Alfred T. Giuliano was appointed as Trustee.[2]  (Bankr. D.I. 12.)  The Trustee is the sole fiduciary for NLG and is responsible for recovering all assets of the estate and prosecuting the causes of action held by the estate.  *Mini-Miners, Inc. v. Lansbeny (In re Lansbeny),* 177 B.R. 49, 55 (Bankr. W.D. Pa. 1995) ("With his appointment, the chapter 7 trustee in the above cases became the sole representative of debtors' estates.  As trustee, he became the successor-in-interest to all pre-petition causes of action belonging to debtors." (citations omitted)).

On February 9 and 10, 2022, the Trustee filed Debtor's Schedule of Assets and Liabilities and Statement of Financial Affairs, respectively (Bankr. D.I. 24, 27) (the "Schedule and Statement").  On March 3, 2022, the Bankruptcy Court entered an Order authorizing the Trustee to retain Fox Rothschild LLP ("Fox Rothschild") as his counsel.  (Bankr. D.I. 39.)

### B.    The Quebec Judgment and the Adversary Proceedings

The following facts appear undisputed.  In 2003, Kosachuk formed NLG to purchase property located in Fisher Island, Florida (the "Property").  When Liza Hazan purchased the Property, Ms. Hazan executed a promissory note in favor of NLG in the original principal amount of $1,275,000, as well as a purchase money mortgage to secure the debt.  In 2007, Ms. Hazan

---

[2] The Trustee did not participate in briefing any of these appeals.  The Court appreciates Appellees' thorough briefing.

defaulted on the promissory note for failure to make payments ("NLG's Default Judgment").  In 2012, in an unrelated matter, the Supreme Court for the State of New York in *9197-5904 Quebec, Inc. v. NLG, LLC,* Case No. 2012-101875, entered a judgment by confession against NLG in favor of Quebec (the "Quebec Judgment").  Litigation ensued when the Quebec Judgment was offset against the promissory note given by Ms. Hazan.[3]

As set forth in detail in the Bankruptcy Court's February 16, 2023 Opinion accompanying the Kosachuk/Selective Dismissal Order (Bankr. D.I. 147) (the "Dismissal Opinion"), the dispute over the Property has been the subject of protracted litigation between NLG and/or Kosachuk and Ms. Hazan, Selective, and Quebec, spanning multiple jurisdictions for more than a decade.

The filing of the involuntary bankruptcy created yet another forum to continue what is essentially a two-party dispute.  Following the filing of the involuntary chapter 7 case, three separate adversary proceedings were commenced in the Bankruptcy Court challenging the Quebec Judgment:

(i)    *Kosachuk v. 9197-5904 Quebec, Inc.,* Adv. No. 21-51264-JKS, in which Kosachuk asserted NLG's assets were misappropriated by Selective using the "sham" Quebec Judgment;

(ii)   *NLG, LLC v. Selective Advisors Group, LLC,* Adv. No. 22-50086-JKS (the "Trustee/Selective Adversary"), in which the Trustee sought a declaratory judgment that the Quebec Judgment is a "sham" and a declaration that the Quebec Judgment be vacated, set aside, and stricken;[4] and

(iii)  *Kosachuk v. 9197-5904 Quebec, Inc. and Selective Advisors Group, LLC,* Adv. No. 22-50421 (the "Kosachuk/Selective Adversary"), in which Kosachuk sought to cancel the indebtedness caused by the Quebec Judgment *nunc pro tunc* to the date of entry on January 22, 2012.

---

[3] Ms. Hazan's ex-husband, Sean Neil Meehan, controls Quebec, Selective, and America Asset Management, LLC.  (*See* Bankr. D.I. 97 at 3.)

[4] This action was filed in 2018 in the United States District Court for the Southern District of Florida (the "Florida District Court") and transferred to the Bankruptcy Court.

As the Bankruptcy Court observed, "the three adversary proceedings seek essentially the same relief—namely, declarations that the Quebec Judgment, a judgment entered in 2012 by the New York state court, is void." (Conversion Opinion at 5.)

### C.    The Conversion Order

On August 16, 2022, Appellant filed a motion seeking conversion of the case from chapter 7 to a case under chapter 11 (Bankr. D.I. 71) ("Conversion Motion") pursuant to section 706(a) of the Bankruptcy Code, which provides, in part, that "[t]he debtor may convert a case under this chapter to a case under chapter 11 ... at any time, if the case has not been converted under section 1112 ... of this title." 11 U.S.C. § 706(a). On November 2, 2022, creditor Juan Ramirez ("Ramirez") filed a declaration in support of the Conversion Motion. (Bankr. D.I. 92.)

On December 19, 2022, the Trustee filed a *Notice of Change from Asset to No Asset* (Bankr. D.I. 120) (the "Notice of No Asset") and the *Chapter 7 Trustee Report of No Distribution* (Bankr. D.I. 122) (the "Trustee's Final Report"). The Trustee's Final Report states, in part:

> I have neither received any property nor paid any money on account of this estate; [] I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and [] there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed. R. Bank. P. 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 15 months. Assets Abandoned (without deducting any secured claims): $ 0.00, Assets Exempt: Not Available, Claims Scheduled: $ 0.00, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $ 0.00.

(*Id*. (cleaned up).)

Federal Rule of Bankruptcy Procedure 5009 provides that the estate in a chapter 7 case "is presumed to have been fully administered when: (1) the trustee has filed a final report and final

account and has certified that the estate has been fully administered; and (2) within 30 days after the filing, no objection to the report has been filed by the United States trustee or a party in interest." Fed. R. Bankr. P. 5009. No response or opposition was filed to the Trustee's Final Report.

Following briefing and oral argument on the Conversion Motion, the Bankruptcy Court issued the Conversion Order and accompanying Conversion Opinion, determining that "Kosachuk ha[d] failed to carry his evidentiary burden of proving entitlement to conversion under chapter 11." (Conversion Opinion at 10.) Among other things, the Bankruptcy Court held that Appellant was not entitled to seek conversion under § 706(a). "Under the plain language of the statute, section 706(a) applies to a debtor seeking conversion, not a creditor or other party in interest." (*Id*. at 8.) The Bankruptcy Court further rejected Appellant's argument that the Debtor has a one-time "absolute" right to convert its chapter 7 case to a chapter 11 case under § 706(a) of the Bankruptcy Code, as NLG did not qualify as a chapter 11 debtor under § 706(d), and case law instructs that these sections must be read together. (*See id*. at 8-12.) Although Appellant did not seek relief under § 706(b),[5] the Bankruptcy Court conducted a thorough analysis, finding that Appellant had not provided any evidence that the Debtor can pay its debts (such as evidence of an operating business, potential income, or assets for distribution to creditors), nor did Appellant dispute that the estate is administratively insolvent. (*See id*. at 12-14.) Additionally, the Bankruptcy Court noted that there is a substantial likelihood of reconversion to chapter 7, substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, and inability to effectuate substantial consummation of a confirmed plan. (*See id.* at 15-16.) Finally, the Bankruptcy Court held that "[c]onverting this case to chapter 11 to obtain tactical litigation

---

[5] Section 706(b) of the Bankruptcy Code provides that, "[o]n request **of a party in interest** and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title at any time." 11 U.S.C. § 706(b) (emphasis added).

advantages is not within the legitimate scope of bankruptcy laws and would be an abuse of the bankruptcy process," and § 105(a) of the Bankruptcy Code authorized the Bankruptcy Court to prevent such an abuse of the bankruptcy system by denying a motion to convert. (*Id*. at 18-19 ("The Bankruptcy Court is not a forum to litigate two-party, non-bankruptcy, state court issues or to relitigate issues previously decided by other courts.").)

### D.     The Kosachuk/Selective Dismissal Order—Adv. No. 22-50421-JKS

As noted, on February 22, 2012, the New York Supreme Court entered the Quebec Judgment, which was a judgment by confession in the amount of $5,000,225 against NLG in favor of Quebec. *See generally NLG, LLC v. Selective Advisors Grp*., *LLC*, 2019 WL 2255033, at *1 (S.D. Fla. Mar. 22, 2019). An affidavit in support of the Quebec Judgment was executed by Raymond Houle ("Houle").[6] Although Houle was, at the time, the president of Quebec, he professed in the affidavit to act on behalf of NLG. On April 21, 2014, Quebec domesticated its judgment against NLG in the Miami-Dade, Florida Circuit Court, and then assigned the Quebec Judgment to Selective.

Selective moved to have NLG's Default Judgment against Hazan judicially assigned to Selective as a form of payment of the Quebec Judgment. The New York trial court granted the motion and ordered the assignment ("Assignment") of the Default Judgment and all of NLG's rights and claims against Hazan to Selective.[7] The Assignment has never been vacated or set aside. In 2014, Selective filed a satisfaction of the Default Judgment and the mortgage and confirmed payment of a credit to NLG. *See NLG v. Selective,* 2019 WL 2255033, at *1.

---

[6] *See* Adv. No. 22-50421-JKS, Adv. D.I. I ("Complaint for Declaratory Judgment") at ¶¶ 19-20.

[7] As previously noted, Ms. Hazan's ex-husband, Sean Neil Meehan controls Quebec, Selective, and America Asset Management, LLC. (*See* Bankr. D.I. 97 at 3.

For over a decade, Kosachuk and NLG have asserted in multiple state and federal courts that the Quebec Judgment is a "sham judgment" and/or void *ab initio*. The Kosachuk/Selective Adversary is yet another attempt. (*See* Complaint for Declaratory Judgment at ¶ 6 ("Plaintiff seeks a declaration that the $5,000,225 indebtedness caused by the [Quebec Judgment] ... is cancelled *nunc pro tune* to the date of entry of February 22, 2012.").) It is one of three adversary proceedings filed in this bankruptcy case all seeking essentially the same relief—namely, a declaration that the Quebec Judgment, a judgment entered in 2012 by the New York state court, is void.

A thorough overview of the litigation brought by Kosachuk and NGL to invalidate the Quebec Judgment, spanning over 12 years and several jurisdictions, is set forth in the Bankruptcy Court's thorough Dismissal Opinion. (*See* Bankr. D.I. 147 at 5-12.) The Court repeats herein only what is necessary to frame the discussion. In addition to the Eleventh Circuit Court of Appeals,[8] the following New York state and federal courts have addressed the validity of the Quebec Judgment:

- On September 30, 2019, Judge Denise Cote, United Sates District Court for the Southern District of New York, entered an Opinion and Order in a proceeding filed by Kosachuk, as Plaintiff, with NLG, as Intervenor, against Selective, as Defendant, denying Kosachuk and NLG's request to declare the Quebec Judgment void (the "Cote September 30, 2019 Opinion");[9]

- On November 13, 2019, Judge Cote entered a Memorandum Opinion and Order denying rehearing of the Cote September 30, 2019 Opinion;[10]

---

[8] *NLG, LLC v. Hazan,* No. 18-24272-CIV, 2019 WL 4541700 (S.D. Fla. Sept. 19, 2019), *aff'd sub nom. In re Hazan,* 10 F.4th 1244 (11th Cir. 2021).

[9] *Kosachuk v. Selective Advisors Grp.,* LLC, No. 19CV4844 (DLC), 2019 WL 4805742, at *1 (S.D.N.Y. Sept. 30, 2019), *aff'd in part, vacated in part, remanded,* 827 Fed. App'x 58 (2d Cir. 2020).

[10] *Kosachuk v. Selective Advisors Grp., LLC,* No. 19CV4844 (DLC), 2019 WL 5965217, at *1 (S.D.N.Y. Nov. 13, 2019), *aff'd in part, vacated in part, remanded,* 827 Fed. App'x 58 (2d Cir. 2020). NLG never appealed the Cote decision. The Cote decision is final and non-appealable as to NLG. Kosachuk unsuccessfully appealed the Cote decision.

- On January 7, 2020, the New York Supreme Court, Judge Shlomo Hagler, entered an Order denying NLG's vacatur of the Quebec Judgment, adopting in full the Cote September 30, 2019 Opinion;[11]

- On September 15, 2020, the United States Court of Appeals for the Second Circuit entered a Summary Order affirming Judge Cote's September 30, 2019 Opinion;[12] and

- On October 14, 2020, on remand from the Second Circuit, Judge Cote again denied Kosachuk and NLG's request to declare the Quebec Judgment void.[13]

In addition, the New York state courts recently denied the vacatur of the Quebec Judgment as follows:

- On March 4, 2021, the Supreme Court of the State of New York, Appellate Division, First Judicial Department dismissed NLG's appeal of Judge Shlomo Hagler's Order Denying Vacatur of the Quebec Judgment;[14]

- On June 1, 2021, the same court denied reargument of its Order dismissing the appeal of Judge Shlomo Hagler's Order Denying Vacatur of the Quebec Judgment.[15]

Finally, on July 3, 2023, after multiple rounds of appeals, the Supreme Court of the State of New York, New York County issued a decision dated June 16, 2023, holding that Appellant's "demonstrated willingness to perpetuate meritless, vexatious, and duplicative litigation warrants sanctions." *Kosachuk v. 9197-5904 Quebec, Inc., and Selective Advisor Group, LLC*, 2023 WL 4323567 (N.Y. Sup. Ct. Jun. 16, 2023), *aff'd* 220 N.Y.S.3d 23, 24 (N.Y. App. Div. 2024) (explaining

---

[11] *9197-5904 Quebec, Inc. v. NLG, LLC.* N.Y. Sup. Ct. Case No. 101875-12 (Jan. 7, 2020). The New York Supreme Court, Appellate Division, First Department dismissed Kosachuk's appeal of Judge Hagler's decision dated January 7, 2020, adopting Judge Cote's decision in full.

[12] *Kosachuk v. Selective Advisors Grp., LLC,* 827 Fed. App'x at 60.

[13] *Kosachuk v. Selective Advisors Grp., LLC,* Case No. 19-4844, 2020 U.S. Dist. LEXIS 190452 (S.D.N.Y. Oct. 14, 2020).

[14] *9197-5904 Quebec Inc. v. NLG, LLC,* N.Y. App. Div. Case No. 2020-02664, NYSCEF Doc. No. 23 (NY Sup. App. Div. Mar. 4, 2021).

[15] *9197-5904 Quebec Inc. v. NLG, LLC,* N.Y. App. Div. Case No. 2020-02664, NYSCEF Doc. No. 30 (NY Sup. App. Div. Jun. 1, 2021).

that Appellant's "attempts to vacate the Judgment by Confession have carried on in the state, federal, and bankruptcy courts of New York, Pennsylvania, Delaware, and Florida for more than 12 years"). Notably, the decision enjoins Appellant "from any future action or proceeding regarding the [Quebec Judgment] against [Appellees] without prior approval" (the "New York Injunction"). (*Id.* at *2.)[16]

Against this backdrop, Appellees moved to dismiss the Kosachuk/Selective Adversary on several bases. (Adv. No. 22-50421-JKS, D.I. 8, 9.) The Bankruptcy Court entered an order establishing a briefing schedule on the threshold issues of jurisdiction and abstention.

Under the *Rooker-Feldman* doctrine, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis,* 546 U.S. 459, 463 (2006). In determining whether the *Rooker-Feldman* doctrine applied, the Bankruptcy Court found that the adversary proceeding met all of the requirements, as Appellant lost in state court and complains of injuries caused by the state court Quebec Judgment; the Quebec Judgment was rendered before the adversary proceeding was filed; and Appellant was inviting the Bankruptcy Court to review and reject the Quebec Judgment. (*See* Dismissal Opinion at 14-15 (citing *Cardillo v. Neary*, 756 F. App'x 150, 154 (3d Cir. 2018)).) As the *Rooker-Feldman* doctrine applied, the Bankruptcy Court determined that it lacked subject matter jurisdiction over the adversary proceeding. (*See id.* at 16-17.) The Bankruptcy Court further determined that even if it did have subject matter jurisdiction, it would abstain from hearing the matter, finding that the majority of the twelve factors considered in such an analysis favored permissive abstention under 28 U.S.C. § 1334(c)(1). (*See id*. at 19-22.)

---

[16] All of the Orders from which Appellant appeals are attempts to invalidate the Quebec Judgment. All of the briefing in these appeals took place after the New York Injunction issued. While Appellees sought dismissal of the appeals as barred by the New York Injunction (*see* Civ. No. 23-540-JLH, D.I. 10), the Court preferred to decide the appeals on their merits.

E.    The Trustee/Selective Dismissal Order—Adv. No. 22-50086-JKS

On April 10, 2018, NLG filed a complaint for declaratory judgment in the Florida District Court.  (Adv. No. 22-50086-JKS, D.I. 2.)  The complaint sought to vacate, set aside, and strike the Quebec Judgment *nunc pro tunc* to the date of its entry in 2012.  The operative complaint was filed on March 5, 2020.  (Civ. No. 23-542-JLH, D.I. 17-1 (appendix to opening brief) at pp. 3-177.)   On January 18, 2022, the Florida District Court entered an Order transferring the action to this Court, which, in turn, referred the matter to the Bankruptcy Court.  (Adv. No. 22-50086-JKS, D.I. 1.)

On September 30, 2022, the Trustee filed a motion to approve a settlement with Ms. Hazan (*id.*, Bankr. D.I. 84) (the "Settlement Motion") that settled the Adversary Proceeding and included releases of Ms. Hazan, Mr. Meehan, Selective, Raymond Houle, and 9197-5904 Quebec, Inc.  A hearing was held on the Settlement Motion on October 25, 2022, and the Bankruptcy Court took the Settlement Motion under advisement.   Thereafter, Mr. Meehan and Selective objected to the Settlement Motion, and Ms. Hazan filed a rescission of settlement and objected to the Settlement Motion.  (*Id.*, Bankr. D.I. 97, 98.)  On November 18, 2022, the Bankruptcy Court issued an Order to Show Cause why, among other things, the Settlement Motion should not be dismissed as moot, and why the chapter 7 bankruptcy case should not be dismissed.  (Bankr. D.I. 101.)  On December 14, 2022, the Trustee withdrew the Settlement Motion.  (Bankr. D.I. 108.)  On December 16, 2022, the Court held a status conference to consider the parties' arguments submitted in response to the Order to Show Cause.  (Bankr. D.I. 119.)  At the status conference, both the Trustee and Selective agreed that the Trustee/Selective Adversary Proceeding should be dismissed.   Kosachuk and Ramirez opposed dismissal.

On December 19, 2022, the Bankruptcy Court directed the parties to confer on a stipulation of dismissal and to submit under certification of counsel either consensual or competing proposed orders.  (Bankr. D.I. 121.)  Although the parties to the case agreed it should be dismissed, they

disagreed whether it should be dismissed with or without prejudice.  Appellant filed a combined Objection and Motion for Leave to Intervene and Substitute as Plaintiff (Adv. No. 22-50086-JKL, D.I. 61) ("Motion to Intervene").  The Motion to Intervene focuses on Appellant's objection to dismissal, asserting in a single sentence and without citation to any case or authority that, "[a]t a minimum, the Court should allow Mr. Kosachuk to intervene, substitute as plaintiff in place of NLG and proceed."  (*Id*. at 7.)  On January 31, 2023, the Bankruptcy Court held a hearing on the competing proposed dismissal orders, at which time Selective reconsidered and consented to dismissal of the adversary, *without* prejudice.  (Bankr. D.I. 141 ("1/31/2023 Tr.").)  On February 16, 2023, the Bankruptcy Court entered the Trustee/Selective Dismissal Order (Bankr. D.I. 146), dismissing the case without prejudice, and denying as moot Appellant's Motion to Intervene.

### F.    The Reconsideration Order

Appellant filed motions for rehearing, reconsideration, and relief from each of the Conversion Order (Bankr. D.I. 157), the Trustee/Selective Dismissal Order (Bankr. D.I. 146), and the Kosachuk/Selective Dismissal Order (Bankr. D.I. 148).  On May 3, 2023, the Bankruptcy Court issued its thorough Reconsideration Order addressing each of Appellants' arguments and ultimately denying relief.

### G.    The Appeals

Appellant filed timely Notices of Appeal with respect to each of the Orders.  These appeals were reassigned to me on January 12, 2024.  The parties having stipulated to, and the Court having granted, multiple briefing extensions, the merits of the appeals were fully briefed on May 22, 2024.  The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## III.    JURISDICTION AND STANDARD OF REVIEW

Appeals from the Bankruptcy Court are governed by 28 U.S.C. § 158, which grants district courts mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees."  28 U.S.C. § 158(a)(1).  The Conversion Order, which denied Appellant's request to convert the chapter 7 case to a case under chapter 11, "dispose[d] of [a] discrete dispute[] within the larger case," and is final and appealable.  *In re Energy Future Holdings Corp.,* 904 F.3d 298, 308 (3d Cir. 2018) (quoting *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 657 n.3 (2006)).  The Orders dismissing the adversary proceedings are also final orders.  *In re Target Indus., Inc.*, 386 Fed. App'x 233, 235 n.1 (3d Cir. 2010).

This Court reviews the Bankruptcy Court's legal determinations *de novo,* its factual findings for clear error, and its exercise of discretion for abuse thereof.  *In re Amer. Pad & Paper Co.*, 478 F.3d 546, 551 (3d Cir. 2007).

## IV.    ANALYSIS

### A.    The Conversion Order

The following issues are raised on appeal: (1) whether the Bankruptcy Court erred in denying Appellant's motion to convert the case to a case under chapter 11 pursuant to § 706(a) when conversion was in the best interest of creditors (Civ. No. 23-540-JLH, D.I. 17 at 7 of 11); and (2) whether the Bankruptcy Court should have dismissed the bankruptcy case (*id*. at 9 of 11). Appellant's opening brief does not argue that the Bankruptcy Court erred in denying conversion under § 706(b), nor does it even mention § 706(b).

#### 1.    The Bankruptcy Court Did Not Err In Denying the Conversion Motion

The Bankruptcy Court did not err in denying Appellant's request to convert the case to a case under chapter 11 under § 706(a).  Section 706(a) of the Bankruptcy Code provides, in part, that "*[t]he debtor may convert a case* under this chapter to a case under chapter 11 ... at any time, if the

12

case has not been converted under section 1112 ... of this title." 11 U.S.C. § 706(a). As an initial matter, Appellant is not the Debtor NLG and cannot seek this relief.[17] The Debtor (or the Trustee who stands in the shoes of the Debtor and is the fiduciary for the Debtor) was not seeking to convert the case. "Under the plain language of the statute, section 706(a) applies to a debtor seeking conversion, not a creditor or other party in interest." (Conversion Opinion at 8.) The Conversion Motion was correctly denied for this reason alone.

Even if Appellant could seek conversion under § 706(a), the Bankruptcy Court properly rejected Appellant's argument that the statute gives the Debtor a one-time "absolute" right of conversion. As Appellant concedes (*see* Civ. No. 23-540-JLH, D.I. 17 at 8 of 11), § 706(a) must be read together with § 706(d), which provides that "a case may not be converted to a case under another chapter of this title ***unless the debtor may be a debtor under such chapter.***" 11 U.S.C. § 706(d) (emphasis added). As the Bankruptcy Court correctly observed, "the Debtor's right to convert is expressly conditioned on NLG satisfying the requirements of the destination chapter— chapter 11." (Conversion Opinion at 9-10.) *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 373 (2007) ("[T]he broad description of the right [to convert] as 'absolute' fails to give full effect to the express limitation in subsection (d). The words 'unless the debtor may be a debtor under such

---

[17] Kosachuk filed the Conversion Motion as a "*pro se* movant." (*See* Bankr. D.I. 71 and Bankr. D.I. 141 (Tr. of Hr'g Jan. 31, 2023, 27:12-16).) *Rowland v. California Men's Colony, Unit II Men's Advisory Council,* 506 U.S. 194, 201-02 (1993) (citations omitted) ("It has been the law for the better part of two centuries ... that a corporation may appear in the federal courts only through licensed counsel."); *In re 69 N. Franklin Tpk.,* LLC, 693 Fed. App'x 141, 144 (3d Cir. 2017) (citations omitted) ("It is well established that a corporate entity such as a limited liability company may not proceed *pro se* and must be represented by legal counsel."). As the Bankruptcy Court correctly held, "[t]here is a distinction between Kosachuk and NLG—they are not one and the same, although they are in privity." (Conversion Opinion at 9 n.37 (citing *Burtch v. Opus, LLC (In re Opus E., LLC),* 528 B.R. 30, 57 (Bankr. D. Del. 2015), *aff'd* 2016 WL 1298965 (D. Del. Mar. 31, 2016), *aff'd* 698 F. App'x 711 (3d Cir. 2017) ("The corporate identity for single member LLCs is also respected.").)

chapter' expressly conditioned [petitioner's] right to convert on his ability to qualify as a 'debtor' under …" the destination chapter).[18]

The Bankruptcy Court further explained that § 706(d) "provides adequate authority" to deny a motion to convert to Chapter 11 when "cause" exists under § 1112(b)(4). (Conversion Opinion at 10 (citing *Daughtrey v. Rivera (In re Daughtrey),* 896 F.3d 1255, 1275-76 (11th Cir. 2018). A non-exhaustive list of "causes" includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," or a debtor's "inability to effectuate substantial consummation of a confirmed plan." 11 U.S.C. § 1112(b)(4)(A), (M). The Bankruptcy Court found that at least these two section 1112(b)(4) 'causes' existed" for denying conversion to chapter 11. (Conversion Opinion at 11.)

The record, including the uncontested Schedule and Statement and the uncontested Trustee's Final Report, supports the Bankruptcy Court's findings that NLG has no funds, no source of income, and no property available for distribution.[19] (*Id.*) The record further supports the finding that, "during this chapter 7 case the Debtor has experienced continuing loss having incurred an

---

[18] *See also In re Home Network Builders, Inc.*, 2006 U.S. Dist. LEXIS 89541, at *7 (D.N.J. Nov. 22, 2006) ("Subsection (a) of § 706 gives a Chapter 7 debtor that is not acting in bad faith the right to convert from Chapter 7 to Chapter 11 unless (1) the case has previously been converted from Chapter 11 pursuant to 11 U.S.C. § 1112(b), or (ii) it is ineligible to be a Chapter 11 debtor.") A debtor is not eligible for conversion to chapter 11 under § 706(a) when, had it filed for chapter 11 in the first instance, such filing would have lacked good faith. As Appellees point out, many of the factors courts typically review in conducting a good faith inquiry are set are present here. *See Primestone Inv. Partners v. Vornado PS, L.L.C.* (*In re Primestone Inv. Partners L.P.*), 272 B.R. 554, 557 (D. Del. 2002) (considering whether case presents, as here, few unsecured creditors, no ongoing business or employees, two-party dispute which can be resolved in state court action, no cash or income, no pressure from non-moving creditors, improper prepetition conduct, and no possibility of reorganization).

[19] The Bankruptcy Court rejected Appellant's contention that the estate possesses assets in the form of a $5 million claim and that "finalizing litigation in Florida and New York" in pursuit of that claim will lead to payment in full of all claimants, as the New York and Florida state courts and the Second and Eleventh Circuit Courts of Appeals have ruled that the Quebec Judgment is no longer subject to challenge. (*See id.* at 9; 1/31/2023 Tr. at 26:10-24)

14

administrative expense claim for legal fees that it cannot pay." (*Id.*)  Additionally, for a chapter 11 plan to be confirmed in the case, the plan must provide for payment of approximately $190,000 in administrative expense claims.  As the Debtor has no assets, and the estate is administratively insolvent, the Bankruptcy Court correctly concluded that the Debtor does not have the financial ability to fund a chapter 11 case or a plan process, cannot be rehabilitated, and that it is therefore unlikely that the Debtor can confirm or consummate a feasible chapter 11 plan.

Appellant has failed to identify any error in the Bankruptcy Court's conclusion that, even assuming Appellant was entitled to seek conversion under § 706(a) (he was not), the Debtor does not qualify as a chapter 11 debtor under § 706(d) and conversion must be denied.

### 2.    The Bankruptcy Court Did Not Err In Declining to Dismiss the Chapter 7 Case

On appeal, Appellant raises the question of whether the Bankruptcy Court should have dismissed the chapter 7 case.  Appellant failed to seek this relief in the Bankruptcy Court and, therefore, there is nothing for this Court to review on appeal.  Appellant's conclusory assertion in his opening brief that "[a]lternatively, the Court should have dismissed the case" does not cure this defect nor does it provide any facts or legal theories for Appellees to respond to or for this Court to consider.  The Court finds no basis to disturb the Conversion Order. [20]

---

[20] Appellant, besides having appealed the Reconsideration Order, does not raise any arguments or even mention it in his Opening Brief.  In his motion for rehearing (Bankr. D.I. 157), Appellant contended that the Bankruptcy Court erred in in denying the Conversion Order because (a) it somehow "missed" the $5 million "Mortgage and Judgment Dispute" litigation claim listed in the Schedule and Statement; (b) Appellant had offered to pay certain of the Debtor's creditors (presumably suggesting this would impact the Debtor's administrative insolvency); and (c) the Debtor's business is litigation.  The Bankruptcy Court addressed and rejected each of these grounds, noting that the Trustee had, subsequent to the filing of the Schedule and Statement and his investigation, reached the conclusion that neither the disputed $5 million claim nor the ongoing litigation were an asset of the Debtor's estate.  (Reconsideration Order at 10-12.)  Appellant's opening brief on appeal does not address those arguments nor does it offer any basis to conclude that the Bankruptcy Court somehow abused its discretion in denying reconsideration.

**B.      The Kosachuk/Selective Dismissal Order**

The following issues are raised on appeal: (1) whether the Bankruptcy Court erred in dismissing the Kosachuk/Selective Adversary under the *Rooker-Feldman* doctrine for lack of jurisdiction; and (2) whether the Bankruptcy Court erred in enforcing a void judgment.  (Civ. No. 23-541, D.I. 14 at 10 of 34.)

**1.      The Bankruptcy Court Did Not Err In Dismissing the Kosachuk/Selective Adversary for Lack of Jurisdiction**

As the Bankruptcy Court explained, the *Rooker-Feldman* doctrine "is confined to cases of the kind from which it acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  (*See* Dismissal Opinion at 14 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Cmp.,* 544 U.S. 280, 284  (2005).)  To determine whether the doctrine applies, the Bankruptcy Court properly considered whether the Kosachuk/Selective Adversary met the following requirements: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) that judgment was rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgment." *Cardillo,* 756 F. App'x at 154 (cleaned up).  The Court agrees that the *Rooker-Feldman* doctrine applies to the Kosachuk/Selective Adversary.  As the Bankruptcy Court correctly held, the Quebec Judgment, a state court judgment, was entered by the New York Supreme Court against NLG in 2012.  The Kosachuk/Selective Adversary seeks a declaration that the Quebec Judgment is void *ab initio* and seeks to vacate the judgment *nunc pro tunc* to the date of

its entry.  Appellant also seeks to "cancel the indebtedness" caused by the Quebec Judgment.[21]

Thus, Appellant is complaining of injuries caused by the New York state court.  Despite his

arguments to the contrary, this action turns on the validity of the Quebec Judgment, which he invites

the Bankruptcy Court to reject, or at least, invalidate.

Appellant argues that the Bankruptcy Court erred in dismissing the Kosachuk/Selective

Adversary for lack of jurisdiction because the *Rooker-Feldman* doctrine has no application to this

case; according to Appellant, the complaint "does not challenge the [Quebec Judgment]."  (Civ. No.

23-541-JLH, D.I. 14 at 18 of 34.)  Appellant asserts that the Kosachuk/Selective Adversary does not

ask "to vacate the [Quebec Judgment]" but rather merely asks "to cancel the indebtedness caused

by the [Quebec Judgment] because it was used to strip NLG of its primary asset, that is the Final

Judgment of Foreclosure against Ms. Hazan."  (*Id*.)  I agree with the Bankruptcy Court that "[t]his

is a distinction without a difference."  (Dismissal Opinion at 17.)   The crux of the action is

Appellant's request to reevaluate, cancel, or change the Quebec Judgment.

Appellant further argues that the *Rooker-Feldman* doctrine does not apply because "he was

not a party to the action when the [Quebec Judgment] was entered in 2012."  (Civ. No. 23-541-JLH,

D.I. 14 at 19 of 34.)  The Bankruptcy Court considered and rejected that argument, holding that the

*Rooker-Feldman* doctrine may have preclusive effect when the parties, such as NLG and Kosachuk,

are in privity.  (Dismissal Opinion at 15-16 (citing *Lance v. Dennis,* 546 U.S. 459, 465 (2006)).)

Appellant cites the *Lance* case for the proposition that "[t]he *Rooker-Feldman* doctrine does not bar

actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion

law, they could be considered in privity with a party to the judgment."  (Civ. No. 23-541-JLH, D.I.

---

[21] During the hearing on the dismissal of Adv. No. 22-50086, Kosachuk confirmed that he was asking the Court, in that adversary, to undo the Quebec Judgment. (1/31/2023 Tr. at 47:17-20 ("THE COURT: So what Court judgments are you asking this Court to undo? MR. KOSACHUK: I'm asking this Court to undo one judgment, the 2012 sham judgment.").

14 at 19 of 34 (quoting *Lance*, 546 U.S. at 466).)  As the Bankruptcy Court pointed out, however,

Appellant unsuccessfully made this identical argument to the United States District Court for the

Southern District of New York:

> Kosachuk argues that *Rooker-Feldman* cannot apply to him because,
> unlike NLG, he was not a party to state-court action when the 2012
> [Quebec] Judgment was entered. Citing *Lance,* he asserts that *Rooker-Feldman* does not bar actions by non-parties even if those parties were
> in privity with a state-court loser. While Kosachuk is correct that
> *Rooker-Feldman* does not bar an action by nonparties "simply
> because, for purposes of preclusion law, they could be considered in
> privity with a party to the judgment," ... the Court's decision in *Lance*
> does not prohibit the application of *Rooker-Feldman* here.
>
> None of the facts that the Court identified in *Lance* counsel against
> applying *Rooker-Feldman* to bar Kosachuk's claims. Kosachuk is the
> founder and manager of NLG. He controls NLG and has directed
> NLG's attempts to vacate the 2012 [Quebec] Judgment for years....
> Simply put, there is no claim that Kosachuk "did not participate in
> [the state-court litigation]," or that he was not in the position to ask
> the state court to review the 2012 [Quebec] Judgment.

*Kosachuk v. Selective Advisors Group, LLC,* 2019 WL 4805742, at *4.  As the Bankruptcy Court

explained, the same is true here:

> Kosachuk is the founder and sole member of NLG. Kosachuk filed
> the involuntary petition to place NLG in bankruptcy.  Kosachuk filed
> a claim for money lent to NLG.  While the Trustee is now the estate
> fiduciary, Kosachuk filed the instant action.  Prior to the bankruptcy
> filing, Kosachuk controlled NLG's litigation.  The *Rooker-Feldman*
> doctrine dictates that the state court is the appropriate forum for
> challenging the Quebec Judgment.

(Dismissal Opinion at 16.)  I agree with the Bankruptcy Court (and the Southern District of New

York, among other courts) that Appellant and NLG are in privity, the *Rooker-Feldman* doctrine

applies, and the Bankruptcy Court lacked subject matter jurisdiction over the Kosachuk/Selective

Adversary Proceeding.

### 2. The Bankruptcy Court Did Not Enforce a Void Judgment

Appellant's briefing contains a detailed argument about why the Quebec Judgment is void *ab initio* and a legal nullity. (*See* Civ. No. 23-541-JLH, D.I. 14 at 23-32 of 34.) Appellant identifies as an issue on appeal whether that the Bankruptcy Court "erred by enforcing a void judgment." (*Id*. at 10 of 34.) It is clear that the Bankruptcy Court did no such thing. Beyond quoting case law standing for the uncontroversial proposition that judgments entered without authority are unenforceable, Appellant makes no attempt to support its argument that dismissing a declaratory judgment action for lack of jurisdiction is somehow akin to enforcing the judgment at issue. (*See e.g., id.* at 32 of 34 (quoting *Chambers v. Armontrout,* 16 F.3d 257, 260 (8th Cir. 1994) ("[R]elief from void judgments is not discretionary.").) In a similar vein, however, Appellant argues that the Bankruptcy Court should have utilized its equitable powers under 11 U.S.C. § 105 to review and declare the Quebec Judgment invalid. The Bankruptcy Court disagreed with this proposition, and so does this Court. The Bankruptcy Court is a court of limited jurisdiction and cannot review and collaterally attack the 2012 Quebec Judgment under its § 105 powers. *Gillman v. Continental Airlines (In re Cont'l Airlines),* 203 F.3d 203, 211 (3d Cir. 2000) ("[S]ection 105(a) has a limited scope. It does not create substantive rights that would otherwise be unavailable under the Bankruptcy Code.") (cleaned up); *In re Argose, Inc.,* 377 B.R. 148, 150 (Bankr. D. Del. 2007) ("Equitable remedies under section 105(a) are limited, however, and should be used only to further the substantive provisions of the [Bankruptcy] Code."). Appellant has failed to demonstrate any error in the Bankruptcy Court's analysis.

### C. The Trustee/Selective Dismissal Order

The following issues are raised on appeal: whether the Bankruptcy Court erred in (1) denying Appellant's motion to intervene as moot; and (2) enforcing and giving full-faith and credit to the void Quebec Judgment. (Civ. No. 23-542-JLH, D.I. 17 at 9 of 24.)

     **1.**     **The Bankruptcy Court Did Not Err In Denying Appellant's Motion to Intervene as Moot**

Appellant does not argue that his Motion to Intervene was *not* mooted by the dismissal of the Trustee/Selective Adversary.  Rather, Appellant argues the that the Trustee/Selective Adversary should not have been dismissed in the first place.  According to Appellant, the Trustee "did nothing to prosecute the action transferred from Florida for several months … then shamelessly negotiated a settlement agreement" with Ms. Hazan, "the beneficiary of the sham [Quebec Judgment]," wherein she agreed to pay Trustee $225,000 "with at least $190,000 of that amount to be paid to his attorneys at Fox Rothschild and nothing to the creditors of NLG." (*Id*. at 6 of 24.)  Appellant asserts that "[t]he case had a fully-briefed and pending Motion for Summary Judgment.  All the Trustee had to do was ask the bankruptcy court to rule.  Instead, the Trustee entered into a self-serving order of dismissal," which "was the wrong outcome for the debtor and its creditors." (*Id*.)

This rehashing falls far short of framing the issue.  Appellant filed the involuntary chapter 7 case against NLG in the Delaware Bankruptcy Court.  At Appellant's request, the Trustee/Selective Adversary was transferred from the Florida District Court to the Delaware Bankruptcy Court.  By virtue of his appointment, the Trustee succeeded NLG in that case.  In February 2022, the Trustee scheduled a cause of action against third parties, identified as a "Mortgage and Judgment Dispute," in the amount of $5,000,225.00.  (Bankr. D.I. 24 at 4.)  The Trustee obtained a stay of the case to allow him time to investigate the Debtors' assets and liabilities, including the cause of action.  Following his investigation and review of the claim, the Trustee determined that the approximate $5 million Mortgage and Judgment Dispute had been fully and finally adjudicated and was not an asset of the estate.  (*See* 1/31/23 Tr. at 54:1-7) ("To be very clear, Your Honor, we no-asseted this case because we performed an exhaustive analysis of the underlying merits of this case and not only us, but we did consult third-party, sophisticated third-party counsel, contingency-fee counsel, that

would be interested, potentially, in taking the case.  They declined, as well, based on the merits.").
Only then did the Trustee reach a stipulation with defendant Selective to dismiss the
Trustee/Selective Adversary Proceeding.   In approving this stipulation, the Bankruptcy Court
"reviewed the plethora of litigation related to the Judgment by Confession and determined the
Trustee's decision to dismiss was sound."  (Reconsideration Order at 8.)  Appellant has identified
no legal error.

> **2.    The Trustee/Selective Dismissal Order Does Not "Enforce" the Quebec Judgment**

Appellant argues that the Quebec Judgment is void on its face as a matter of law and the
indebtedness caused by it must be cancelled *nunc pro tunc* to February 22, 2012.  Again, the legal
argument is unclear.  The Trustee/Selective Dismissal Order did nothing to "enforce" the Quebec
Judgment by dismissing without prejudice an action to invalidate it.  Rather, the Bankruptcy Court
approved the Trustee's decision to dismiss the case based on his business judgment, with advice of
counsel that the dispute had been fully and finally adjudicated, the claim lacked merit, and even
absent those factors, the estate lacked funds to pursue it.  Such a dismissal does not amount to
enforcement of another court's judgment.

## V.    CONCLUSION

For the reasons set forth above, the Orders will be affirmed.  The Court will consider no
further requests for relief with respect to these appeals.  The Court will issue a separate Order
consistent with this Opinion.